Abraham John Eder v. Commissioner.
Eder v. Commissioner
Docket No. 19268.
United States Tax Court
1950 Tax Ct. Memo LEXIS 277; 9 T.C.M. (CCH) 98; T.C.M. (RIA) 50036; February 10, 1950
*277 On his 1944 income tax return petitioner claimed certain business expense deductions and a capital loss deduction because stock he owned became worthless in that year. On the facts, (1) Held, that the major portion of such expenditures was made for business purposes. (2) Held, that the exact amount paid for those expenditures which were for business purposes is not determinable from the evidence, but an estimate of such expenditures can properly be made. Cohan v. Commissioner, 39 Fed. (2d) 540. (3) Held, further, that petitioner is not entitled to a capital loss deduction due to failure to prove the basis of his stock. Abraham John Eder, pro se. Ellyn E. Strickland, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion Respondent determined a deficiency in the income tax of petitioner for 1944 in the amount of $1,072.85. This proceeding presents two questions for our determination: (1) Was petitioner entitled to all or any part of the $2,983.49 deduction he claimed for ordinary and necessary business expenses? (2) Was petitioner entitled to a capital loss deduction of $1,000 because stock he owned became worthless *278 in 1944? Findings of Fact Petitioner is an individual residing at 150 Bon Air Avenue, New Rochelle, New York. He filed his tax return for the year 1944 with the collector of internal revenue for the 14th district of New York. For the past 20 years he has been engaged in the business of buying small parcels of real estate, erecting gasoline stations or stores thereon, and leasing them to major oil companies and chain stores. During 1944 he was the exclusive manager of more than 30 such sites located in New York City, Brooklyn, Collingwood, Syracuse, Brewster, Walton, Mamaroneck, Yonkers, Hudson Falls, Oxford, Port Henry, Bronxville, Southampton, and Cooperstown, New York; Danbury, Waterbury, Meriden and Greenwich, Connecticut, and Hawthorne and Garfield, New Jersey. As a headquarters for the conduct of his business during the first four months of 1944 petitioner sublet office space at 370 Lexington Avenue, New York City, from Jacob Meadow. The total rental he paid for these premises for this period was $200. For the remainder of 1944 petitioner subleased office space from Nat Helman at 475 Fifth Avenue for which he paid $60 a month plus $3 a month for the use of the telephone *279 switchboard for incoming calls. Petitioner estimates his office rent for the year at $727.50. The allowable amount for office rent in 1944 is $704. Petitioner paid Helman $10.50 for the occasional use of the latter's secretary during the eight months he was in that office in 1944. During the fourth months he occupied office space with Meadow, petitioner estimates his share of the stenographer's fee was $64. There was very little need for dictation or typing in petitioner's type of work, except for executing lease agreements after closing a transaction with an oil company or a chain store. The charge for use of the stenographer in Meadow's office was $1 an hour. The allowable amount for stenographic services in 1944 is $14.50. In petitioner's estimation he spent $285.60 for telephone services in connection with his business during 1944. He had an office telephone throughout the year and paid the telephone charges for eight of these months prior to the close of the year. The total expense incurred for six of these eight months was $184.25. The amount allowable for such expenses is $234.25. Petitioner's personal checking account at the First National Bank of New Rochelle, New York, *280 was used by him both for business expenses and such personal expenses as lunch, transportation, etc. He made no allocation between the two types of expenses in 1944. No part of the bank's service charge of $10.96 for checks by him in that year is allowable as a business expense. Petitioner estimates that he spent $66.75 in 1944 for miscellaneous expenses incurred in moving his office furniture from 370 Lexington Avenue to 475 Fifth Avenue and in fixing up his office. Of this estimated sum he paid $2.25 for door lettering, $8 for repairing a carpet, $8 for a waste basket and new casters for a desk, $5 for polishing a desk, and $5 for moving two chairs to the upholsters. The remaining $38.35 was the lump sum he estimated he spent for moving three steel files, a large chair, a lamp and two office chairs from one office to the other plus tip. The amount allowable for all these miscellaneous expenses is $48.40. Petitioner calculated that he paid a total of $130.68 for Christmas gifts in connection with his business in 1944. He purchased four cosmetic kits costing approximately $11 each for young ladies employed in Nat Helman's office. These women were not petitioner's employees and *281 when they performed any special service for him during the year he generally paid for it in cash. He also gave cosmetic sets to telephone operators working at the Gulf and Standard Oil Company offices who helped him out by putting calls through or delivering messages for him. No amount is allowable as a deduction for this item of expense. During 1944 petitioner used the mail to send out statements for monthly payment of mortgages, and to get out tax checks four or five times a year in addition to the usual run of correspondence. He arbitrarily assigned $48 as the expense for postage that year. The amount allowable for this expenditure is $16. In 1944 petitioner was required to visit all the various real estate parcels he owned in New York, New Jersey and Connecticut at last once to examine the state of their repair, see that they were kept in order and to negotiate for renewal of leases. He was also out in the field frequently to spot new locations and take options on land in New York and nearby states. For shorter excusions he used his own car, while he took the train for longer ones. Such trips resulted in auto, traveling and entertainment expenses in the pursuit of his business. *282 He was not reimbursed for such expenses. Petitioner arbitrarily estimated his auto expenses for 1944 to be $350 computed on the basis of $7 per week while he was in the field. This included charges for gas, auto insurance and car license fees. In this year of gas rationing he was given a "B" coupon to get around on business trips. The amount allowable for these expenses is $225. Petitioner estimated his traveling expenses at $850 for 1944. This included train, hotel, taxi and eating expenses while on trips to more distant locations. He made about 20 trips that year by train at a cost of $15 to $20 round trip. Petitioner stayed at hotels approximately 20 nights during 1944 at an average cost of $3.75 per night. His meals on such trips averaged $3 a day. During the twelve-month period taxi cabs cost him about $25. He used them to go to the court house to check land titles and to call on real estate agents in the various towns he visited. The amount allowable for all traveling expenses is $450. Petitioner estimated that his entertainment expenses in connection with his business amounted to $450 in 1944. He frequently took employees of oil companies and chain stores to dinner or *283 to a movie when he was trying to lease his sites. The average price of admission to movies in towns he visited was 75 cents. The amount allowable for these expenditures is $85. Northeastern Service Sites, Inc. (hereinafter referred to as Northeastern), a corporation in which petitioner held 50 per cent of the stock, purchased a piece of property in Port Chester, New York, in 1929 and erected thereon a gas station which it leased to the Texas Company for a 15-year period. Northeastern encumbered the site with a $16,000 first mortgage and a $1,500 second mortgage. In 1944 the oil company did not renew its lease, and the property was sold at a foreclosure sale to the mortgagees when Northeastern defaulted in its mortgage payments. Northeastern became inactive following the loss of this site, its only asset. On his income tax return for 1944 petitioner claimed the following deductions as business expenses: Office rent
$ 727.50
Bank charges
10.96
Teelphone
285.60
Stenographic service
64.00
Miscellaneous expenses
66.75
Christmas gifts to help
130.68
Automobile expenses
350.00
Traveling expense
850.00
Entertaining expense
450.00
Postage
48.00
Total
$2,983.49
*284 Petitioner also claimed a long-term capital loss of $1,000 due to the worthlessness of his Northeastern stock in 1944. In his notice of deficiency determining a deficiency in petitioner's income tax for 1944, respondent disallowed the entire amounts petitioner claimed as deduction for business expenses and for long-term capital loss. Under "Explanation of Changes", respondent stated in part: "Capital loss and business deductions claimed were not substantiated." Opinion HILL, Judge: The first question we must determine is whether petitioner was entitled under section 23 (a) (1) (A) of the Internal Revenue Code to all or any part of the $2,983.49 deduction he claimed for various business expenses on his 1944 income tax return. Respondent on brief admits that petitioner should be allowed some deduction for office rent and telephone and stenographic charges he paid that year, but respondent contends that the amounts listed for these items on petitioner's return are in excess of the sums petitioner actually paid. As to the other items which petitioner reported as business expenses, respondent challenges them in toto for lack of substantiation. It is true *285 that in some instances petitioner has failed to show that expenditures he incurred in 1944 were "ordinary and necessary" within the meaning of section 23 (a) (1) (A), supra. As to the other items of expense listed on the return, while we are convinced that they were necessary to the prosecution of petitioner's business, yet proof of the exact amount he paid in each instance is generally unsatisfactory. He kept no record of his expenses in 1944, and in relatively few instances are his estimates of amounts actually paid supported by tangible evidence such as cancelled checks, check stubs and receipts or by clear explanations. Under these circumstances we conclude that as to those expenses which meet the statutory requirements, we should not disallow them in toto for lack of adequate substantiation of the exact amounts he claimed. In such instances we have used our best judgment in approximating the minimum amounts actually expended by petitioner as accurately as the record permits. See Cohan v. Commissioner, 39 Fed. (2d) 540, 543, and Maurice P. O'Meara, 8 T.C. 622. We therefore found as a fact and now hold that petitioner is entitled to deduct $704 for office *286 rent, $14.50 for stenographic services, $234.25 for telephone services, $48.40 for moving his office furniture and fixing up his office, $16 for postage, $225 for auto expenses, $450 for traveling expenses and $85 for entertainment expense. We uphold respondent's disallowance of any deduction for bank service charges petitioner paid on his personal checking account since there is no reasonable basis in the record for allocating these charges between checks used for personal expenses and those used for business purposes. We further hold that petitioner was not entitled in any part to a $130.68 deduction he claimed for Christmas gifts to help. The evidence reveals only that he gave cosmetic sets to female employees of Nat Helman and to telephone operators at Gulf and Standard Oil Companies. Petitioner admitted he generally paid cash for any significant service such persons performed for him. We are not persuaded that such expenditures were ordinary and necessary in the pursuit of petitioner's business. The other question for our determination is whether petitioner was entitled to a $1,000 deduction under section 23 (g) (2) of the Code on the ground that stock he held in Northeastern *287 became worthless in 1944. Assuming that such stock lost all its value in that year, yet we are unable to sustain petitioner's claim, because he has failed to show the basis this stock had in his hands. His statement that the stock cost him $2,650 stands alone in the record, unsupported by any tangible evidence or the testimony of any other witness. Due to the generally vague and unsatisfactory testimony petitioner offered on both the first and second issues, we do not feel we can rely on his uncorroborated statement alone to establish his basis in the stock. See Quock Ting v. United States, 140 U.S. 417, 420, 421. Nor does the surrounding evidence provide any reasonable means for us to approximate the basis of this stock. We therefore uphold respondent's disallowance of the capital loss deduction. Decision will be entered under Rule 50.